WILLIAM E. YOUNG and Another v. CITY OF MANKATO.[1]

December 29, 1905.

Nos. 14,573—(194).

**Municipal Board—Counsel.**

    A board of freeholders, appointed to draft a charter for a municipality, cannot employ and agree to pay one or more of its members as counsel for the board, to furnish advice to it and to prepare a charter for it.

Action in the district court for Blue Earth county to recover $330.52 for services rendered by plaintiffs in drafting a charter for defendant city at the request of a charter commission of which they were members. The case was tried before Lorin Cray, J., who granted a motion to dismiss the action upon the close of plaintiffs' testimony. From an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*W. E. Young* and *H. L. Schmitt,* pro se.

*C. O. Dailey,* for respondent.

JAGGARD, J.

    This appeal involves one question: Can a board of freeholders, appointed to draft a charter for a municipality, employ one or more of its members as attorneys for the board, to furnish such board legal advice and to prepare, write, compile, and draft a charter for such board?

    Chapter 280, p. 507, Laws 1897, proposed an amendment to the constitution empowering the legislature to frame laws enabling municipal corporations to adopt charters prepared by boards of freeholders appointed by the district judge of the judicial district in which the given municipality may be located. There was no restriction in this enabling act as to the compensation to be paid members of such boards, and no provision that members of such boards shall receive no compensation for their services. This enabling act was submitted to the legal voters of the state and adopted. Thereafter the legislature defined the manner in which such boards shall be appointed and in which charters shall be drafted, presented, and voted upon. (Laws 1899, p. 462, c. 351, as

---

[1] Reported in 105 N. W. 969.

slightly amended by Laws 1901, p. 539, c. 323.) Chapter 129, p. 159, Laws 1901, gives such board of freeholders the right to employ stenographers for performing clerical work for them in framing charters, and requiring cities for which such charters were framed to pay such stenographers reasonable compensation for their services, not exceeding $500. Chapter 238, p. 349, Laws 1903, re-enacted all former laws relating to so-called "home rule" charters. At the end of section 3 of this act occurs the following sentence:

> The board shall always contain its full complement of members, and its members shall receive no compensation for their services.

Chapter 350, p. 634, Laws 1903, provides that any municipal corporation in the state of Minnesota, in which a board of freeholders has been or may hereafter be appointed for the purpose of framing a charter under the provisions of chapter 351 of the general laws of Minnesota for 1899, or any acts amendatory thereof, is authorized and required to pay a reasonable compensation for any stenographer or attorney which said board of fifteen freeholders may deem it advisable to employ, to assist in doing clerical work or rendering legal services for said board in the framing of such charter, and also for printing such charter, if so directed by the board, such expenditures, however, not to exceed the sum of $500.

In accordance with this legislation a board of charter commissioners was appointed by the court and framed a charter for the city of Mankato. The plaintiffs were members of that board, and were by resolution employed as attorneys to draft for it a proposed charter for its consideration and adoption, and to render any and all necessary legal services for and in behalf of said board that might be and become necessary to the drafting and considering of such proposed charter. Neither plaintiff participated in the making, considering, or passing of said resolution as members of said board. The charter which plaintiffs drafted was adopted by the board, presented by it to the mayor, and was finally submitted to vote at a general election. The services were rendered in good faith, and were reasonably worth the sum of $330.52. The case was tried before a jury. The court granted the motion of the de-

fendant to dismiss the action. From an order denying a new trial, this appeal was taken.

The question thus presented is not whether the board having the appointive power also had the power to fix the compensation of the person engaged to further its legal purpose, but whether such board is prohibited by law from employing at the cost of the public one or more of its own members. The validity of such a contract as is here involved is not to be determined by the fact that as a result the public received a benefit or suffered an injury, but by general principles of public policy governing it, and by a construction of the terms of the law creating such board and regulating its employment of assistants. "It is among the rudiments of the law that the same person cannot act for himself and at the same time with respect to the same matter as the agent of another whose interests are conflicting. * * * The two positions impose different obligations, and their union would at once raise a conflict between interest and duty; and, 'constituted as humanity is, in the majority of cases duty would be overborne in the struggle.'" Marsh v. Whitmore, 21 Wall. 178; Justice Field, in Wardell v. Union Pac. R. Co., 103 U. S. 651, 658. Therefore a court will refuse to give effect to arrangements by directors of a business corporation to secure at its expense advantages to themselves. Wardell v. Union Pac. R. Co., supra; Thomas v. Brownville, F. K. & Pac. R. Co., 109 U. S. 522, 3 Sup. Ct. 315; Wright v. Kentucky & G. E. Ry. Co., 117 U. S. 72, 94, 6 Sup. Ct. 697, 821; McGourkey v. Toledo & O. C. Ry. Co., 146 U. S. 537, 565, 13 Sup. Ct. 170; West v. Camden, 135 U. S. 507, 10 Sup. Ct. 838, (where there was no private gain).

The rule governs equally whether one deals with himself, or with the directors of whom he is one, or with a board of which he is a member. San Diego v. San Diego, 44 Cal. 106; Santa Ana Water Co. v. Town (C. C.) 65 Fed 323. The same principle has been applied to public employments (West v. Camden, supra; Oscanyan v. Arms Co., 103 U. S. 261, 272), and generally, although not universally, to contracts by members of municipal boards with such boards, in the strongest terms, to a large variety of facts, and with a recognition of the general rule, in connection with and apart from the relevant statutory and constitutional provisions. "Whether forbidden by a statute or condemned by public policy, the result is the same." Justice Swayne, in Meguire v. Corwine,

101 U. S. 108, 111; 36 Cent. Dig. "Municipal Corporations," col. 631, § 657, et seq.; 2 Current Law, 978, § 12. A member of the common council of a village of this state cannot lawfully enter into a contract with the municipality for his own benefit, which depends upon authority derived from a vote of such council. Stone v. Bevans, 88 Minn. 127, 92 N. W. 520. And see Bailey v. Strachan, 77 Minn. 526, 80 N. W. 694; Land v. McIntyre, 100 Wis. 245, 75 N. W. 965.

The services here sought to be paid for involve the identical services which the commission was to perform. They differed only in their extent from those which other members undertook to perform by accepting appointments. Accordingly this case is obviously different from the authorities which allow compensation to a municipal officer for services rendered beyond the scope and not within the line of official duties, as in Evans v. Inhabitants, 24 N. J. L. 764; Reif v. Paige, 55 Wis. 496, 13 N. W. 473; Mayor v. Muzzy, 33 Mich. 61, (where the mayor, though a member of the city council was employed as attorney) ; In re Conrad (C. C.) 15 Fed. 641, 643. Nor does this case present any question as to the eligibility of one person to hold two offices at the same time, as in State v. George, 22 Ore. 142, 29 Pac. 356. There is no controversy here as to plaintiffs being members of the board which made the appointment, nor was there any emergency or other peculiar circumstance distinguishing this from the ordinary case, as in De Witt v. Mills, 126 Iowa, 169, 101 N. W. 766.

The statutory provisions referred to distinctly provide that no member of the board shall receive compensation for their services. The legislative act enabling that board to employ counsel, in the light of the general principles considered, did not remove the statutory prohibition of compensation. The purpose of the law was to secure a charter as a result of the gratuitous services of representative men in the community. Such services were in contemplation of the law purely honorary. The court will take judicial notice of the fact that in other cities men of the highest personal character from various walks in life have rendered such services of great value, involving large personal sacrifice, without pay, entirely from a sense of fidelity to public interests. That in this case counsel rendered special services greatly in excess of those of any other members of the board, and practically did the work of the board, does not alter the necessary construction of the law. This con-

struction distinguishes this case from the most nearly similar authority to which our attention has been called, or which we have been able to find. City v. Rossiter, 46 Kan. 237, 26 Pac. 674. We are clear that as a matter of law members of a charter commission cannot employ themselves to assist themselves.

If all this court did was to inquire into the honesty and good faith of the exercise of the discretion of the board, or of the services performed, it would have no hesitation in enforcing the contract. The services were rendered under a reasonable, although we believe an incorrect, construction of the law. "Hard cases" should not be allowed to "make bad law." The remedy of the plaintiffs is by appeal to the legislature, not by resort to the courts.

Order affirmed.