### SWIGETT v. UNITED STATES.

(District Court, D. Montana. November 9, 1896.)

REGISTER OF LAND OFFICE—OFFICE RENT—LIABILITY OF UNITED STATES.
There is an implied contract on the part of the United States to refund, to a register of the land office, office rent necessarily paid by him, in order to have and maintain an office necessary to the conduct of the land office business in his district.

Geo. M. Bourquin, for plaintiff.
P. H. Leslie, U. S. Dist. Atty.

KNOWLES, District Judge. In this action Samuel A. Swigett sues the United States to recover the sum of $699 for moneys paid by him for the use and benefit of the United States on account of rent for the United States land office at the district of Helena, state of Montana.

I find as facts under the pleadings and evidence: First. That said Samuel A. Swigett is a resident of Helena, state of Montana. Second. That he was appointed register of the United States land office for the Helena land district of Montana in May, 1890, and served as such officer from the 3d day of July, 1890, to the 1st day of June, 1894. Third. That during the time intervening between said dates the said land office for the Helena district of Montana was established by law at the city of Helena, said state; and that, in order that the business pertaining to said office should be properly conducted, a place or office was

required, and it was required that the same should be kept open during business hours; and that it was necessary that said office should be kept not only for the transaction of the business pertaining to said office, but was also necessary as a place for the keeping of the books, records, papers, and files pertaining to said office, and the furniture used therein, the property of the United States. Fourth. That petitioner, in company with the receiver of said land office, took charge of the rooms used as and provided as an office, and of the books, records, files, and furniture therein, and that they did occupy said rooms in the discharge of their respective duties as register and receiver during the time they held said offices; and that said records, books, files, and furniture were kept in the same during that period. Fifth. That during the time said petitioner and said receiver occupied as an office said rooms, the United States failed to pay any part of the rent for the same; that petitioner during said time paid on said rent, for and on behalf of the United States, to the end that said land office might be maintained, the sum of $699; that said expenditure was necessary in order that the said land office of said Helena district in Montana should be kept open, and the business of the United States pertaining to the sale of public lands in said district should be properly transacted; and that the sum so paid was a reasonable and proper sum for that purpose. Sixth. That the salary petitioner was to receive was to equal $3,000 per annum, provided the salary and fees received for the discharge of the duties of said office amounted to that sum; that the earnings of the said office of register amounted to more than said sum, to wit, $3,200 per annum, and that said sum was paid into the treasury of the United States, as required by law; that the United States paid to petitioner the said sum of $3,000, but, although petitioner presented his account for the said sum so paid for rent, as above stated, to the proper officers of the United States, and demanded payment therefor, the United States failed and refused to pay the same.

I find as a conclusion of law that there was an implied contract on the part of the United States to refund and pay to petitioner the said sum of $699, being the amount of said rent for rooms for said United States land offices, paid by him, said petitioner. The reasons which have induced me to come to the above conclusion are as follows: The land district of Montana was created by an act of congress dated March 2, 1867. In said act it was provided that a register and receiver of public moneys should be appointed for said district, who should reside at the place at which said office should be located, and should have the same powers, perform the same duties, and be entitled to the same compensation, as were prescribed by law in relation to land offices of the United States in other territories. The secretary of the interior, by this act, was authorized to locate the said land office. See 14 Stat. 542, 543. Subsequently the said secretary of the interior located the said land office at Helena, Mont. There are several provisions of the statutes of the United States which contemplate that there should be an office or

place of business in which the registers and receivers should transact the business pertaining to their office. Section 2235, Rev. St., provides that the register and receiver shall reside at the place where the land office for which he is appointed is directed by law to be kept. In section 2262, Rev. St., it is provided that it shall be the duty of the officer administering a certain oath to file a certificate thereof in the public land office of the district. It is undoubtedly a fact that the United States land offices in all of the Western states are kept as public offices. The records thereof are public records.

It further appeared by the evidence in the case that the register and receiver of the Helena land district did not select their office, but that a special agent of the interior department selected and designated the rooms which should be occupied as the public land office at Helena. Congress has, from time to time, made appropriations for the payment of the rent of the United States land offices. It appears from a letter of the secretary of the interior, in evidence in the case, that when these appropriations have been insufficient to pay the rent of all such offices he has designated the offices of which the office rent should be paid, and, according to his sense of justice, has designated that the office rent at places where the register and receiver were each entitled to a salary of $3,000 per annum should not be paid. There is no law which directs such action, and there is no law that provides that such registers and receivers should pay the rent for their offices. In order that such registers and receivers should have an office in which to transact the public business, they are required to pay the rent therefor. This is understood at the interior department, to which such officers belong.

The district courts of the United States have jurisdiction to hear and determine all claims against the United States founded upon a contract, express or implied. 1 Supp. Rev. St. (2d Ed.) p. 559, §§ 1, 2, of an act to provide for the bringing of suits against the government of the United States. The question is here presented as to whether there is an implied contract on the part of the United States to repay to petitioner the amount of money he paid for rent for a United States land office as above stated. Whenever one person pays out money on account of and for the benefit of another person at his request, there is an implied contract that the last person shall repay to the former the same. Under the circumstances presented in this case, I think there was an implied request on the part of the United States that petitioner should pay that rent. "An agent is entitled to be reimbursed by his principal for all of his advances, expenses, and disbursements made in the course of his agency on account of or for the benefit of his principal, when such advances, expenses, and disbursements have been properly incurred, and reasonable and in good faith paid, without any default on the part of the agent." Mechem, Ag. § 652. The same rule applies to public officers. Mechem, Pub. Off. §§ 877–879. In this case there is no dispute but the amount of rent was reasonable, and in good faith paid. It was a proper payment, for otherwise the United

States could not have maintained a public land office at Helena, and the said register and receiver could not have properly conducted the business of such office.

In the case of Andrews v. U. S., 2 Story, 202, Fed. Cas. No. 381, Justice Story said of a claim made by a collector of customs for office rent, fuel, clerk hire, and stationery against the United States:

"It appears to me very clear that these expenditures are properly to be deemed incidents to the office of the collector, and therefore that they ought to be allowed as proper charges against the United States."

This charge was made as an offset against a claim against the collector on his official bond. The supreme court, in commenting upon this case in U. S. v. Flanders, 112 U. S. 93, 5 Sup. Ct. 69, said:

"The view taken was that, if a claim, though not strictly of a legal nature, was ex æquo et bono due to the defendant for moneys expended on account of and for the benefit of the United States, he was entitled to an allowance and compensation therefor upon the footing of a quantum meruit, under section 3 of the act of March 3, 1797 (1 Stat. 514)."

In this case of U. S. v. Flanders the supreme court held that a collector of internal revenue, who had paid for advertising required to be done by law, was entitled to be reimbursed by the United States therefor, although there was no law that provided for such reimbursement.

In the case of U. S. v. Stowe, 19 Fed. 807, an Indian agent was required by an order of the commissioner of Indian affairs to have transported certain government property. It was held that the agent was entitled to reimbursement for the money expended in procuring such transportation, although there was no law providing for such repayment.

The theory upon which these cases were decided undoubtedly was that when, by law, a government officer is required to perform a certain duty which requires the expenditure of money, it should be considered as an incident to the performance of the duty.

In the case of Gratiot v. U. S., 15 Pet. 336–371, the supreme court said:

"The department charged with the execution of the particular authority, business, or duty has always been deemed incidentally to possess the right to employ the proper persons to perform the same as the appropriate means of carrying into effect the required end, and also the right, when the service or duty is an extra service or duty, to allow the persons so employed a suitable compensation."

In this case it was also said that an officer required to perform extra services might show a contract, either express or implied, for the payment of such services. It would seem that this case also sustained the view that when an officer performs a required duty he would have the right to do what was necessary and incident to the performance of the same,—he can employ persons, and allow pay therefor. In applying the principles enunciated in this case to the one at bar, it would appear that they would justify the claim that when an officer is required to keep open a public office for the transaction of public business, he ought to be allowed for the necessary and proper expenses incurred in performing that duty.

In the case of U. S. v. Lowe, 1 Dill. 585, Fed. Cas. No. 15,635,

it was held that the claim of a receiver of a United States land office for office rent might, under circumstances, be allowed as an equitable credit, under the act of March 3, 1797. The circumstances under which it was held such an allowance should be made are not stated in the decision. In considering the allowance of a claim as an equitable offset, it should be borne in mind that at common law an independent claim or demand could not be offset against another independent claim or demand. Where some equitable ground appeared, a party might resort to equity to have one such claim offset against the other. The term "equitable claim" or "offset" may be applied to such claims. Until the passage of the act organizing the court of claims, the United States could not be sued. Now, under that act, and that of 1887, the United States can be sued upon an express or implied contract, both in the court of claims and in the district and circuit courts of the United States. Clark v. U. S., 95 U. S. 539; Salomon v. U. S., 19 Wall. 17; 1 Supp. Rev. St. (2d Ed.) p. 559.

The case of Bane v. U. S., 19 Ct. Cl. 644, cited by the United States district attorney, would not seem to be in point in this case. In that case the only question considered by the court was as to whether the secretary of the interior should be compelled to pay office rent for a United States land office at Salt Lake, Utah. In that case it was held that he could not be so required, because there was no appropriation of congress covering such an expenditure. It was not decided that the United States was not responsible for such rent.

For the reasons assigned, it is ordered that judgment be entered against the United States for the sum of $699.